Case No. 19-3076, USA v. Arvel Henderson II Argument not to exceed 15 minutes per side. Ms. Solove, you may proceed for the appellant. Thank you. Good morning, your honors and opposing counsel. If it pleases the court, my name is Deborah Solove and I represent Arvel Ray Henderson in this case. I want to start by talking about the Brady violation and the court's failure to grant a motion to continue, but I have to do a negative thing to me before I forget. There is a change I'd like to make to my brief on a different issue and it was the argument about the statement in closing argument about Mr. Henderson's silence and we stated in the brief that the court's review was for abuse of discretion. I'm sorry, that it was yeah, we did not state that. We said it was de novo because it was part of his motion for judgment of acquittal, but we can see that the United States has correctly stated that the court's review of that issue is for abuse of discretion and I'm sorry to start out that way, but I want to make sure I didn't forget it. The Brady violation in this case is, I admit, convoluted and not the least bit straightforward, but there was late discovery in this case and what it showed was somewhat shocking and that was that there was collusion between defendants civil bankruptcy fraud counsel and I'm sorry, civil bankruptcy counsel, not on the bankruptcy fraud between them and the U.S. trustee's office and in law enforcement talking about making sure they had a criminal case of bankruptcy fraud and understand this was Mr. Henderson's counsel who was having these email conversations. There had been three anonymous tips, I guess, given to the bankruptcy court claiming that there was problems with the bankruptcy schedules. His counsel was threatened, it appears in these emails, with their own criminal liability, which certainly conflicted them immediately. That was never disclosed to Mr. Henderson until these emails were produced. Why does this affect sentencing because what the way you brought it up or it was brought up below was as a motion to continue sentencing and I don't really understand why sentencing should be delayed until there could be a lengthy explanation or exploration of whether there was a Brady violation. Your honor, I know that notices of appeal have to be filed within 14 days of the sentencing judgment or 14 days of the last motion, but I can assure you that most counsel do not want to risk losing that appellate right if they guess wrong, number one. And number two, there was no assurance that within those 14 days that his counsel could get another motion filed. It involved an exploration of his civil bankruptcy counsel and whether or not they would talk to him or he could get any further information. So  to show why there was a Brady violation in this case, even though it was post-trial, that it affected the fairness of that trial. Did that answer your question? Well, I hear what you're saying. Can you raise those issues in a 2255? Generally, Brady issues that are discovered late can be raised in a There was apparently a bankruptcy fraud prosecution as a criminal prosecution separately, right? Because there had been an issue, a motion to consolidate those two trials, correct? There was, and the consolidation is the issue why this Brady information affected this first trial. But as to the second trial, it wasn't so much a Brady issue because it was produced, but it was definitely produced by the time of the sentencing in January of 2019. And that trial didn't proceed until November of 2019, as I recall. So this information then was pertinent to the bankruptcy fraud trial and was involved there, is that right? So you know what the information is exactly? Yes, it's attached, well, at least the, I guess, the tip of the iceberg is attached to the motion for continuance. But why it affected the first trial was the government sought to consolidate those trials. And when they saw the defendant opposed it, they in fact at that point superseded the indictment because they realized they had a problem on the face of the indictment, which was what the court had to look at for consolidation. So they always believed that the bankruptcy fraud was part of the money laundering, that it continued the concealment. And in point of fact, I think it was in November of 2017, they filed a motion in limine to be able to use the bankruptcy pleadings in the money laundering case. And all of the money laundering and bankruptcy discovery had all been produced like a year earlier, these cases had drug on. So the defendant's decision whether or not to testify, and I have to take this solely from the record that we have, which is clearly incomplete, his decision whether or not to testify was impacted by this because the bankruptcy fraud suddenly had a new, not just a defense, but maybe a reason to dismiss the bankruptcy fraud because of these activities. And then I will stop. Is the result of the bankruptcy fraud trial known? Is it a matter of public record? And if so, what is it? It is. It's case number 16-285, and he was convicted of three counts and got a 72-month sentence. And is that under appeal? It is, your honor. I believe the brief is currently due the first week of August. Thank you. Miss Ola, if I could follow up on Judge Moore's questions. I understand why if the underlying claim here is that his attorney at the trial was not truly acting independently. I understand that, but you don't seem to have, that doesn't seem to be the basis of this Brady argument. I also understand why this information would arguably be relevant to the bankruptcy fraud case, but I'm still mystified as to how it impacted sentencing in this case, which is the question that Judge Moore asked you, and I'm still not certain that I understand your answer. Well, it impacted sentencing in a roundabout way, and that is, and I'll answer your last question first, and that is that the order of these trials was important, and as well the consolidation of them was important, and whether or not he was going to testify is important. And so at the time he was sentenced for the money laundering case, if it had been fully developed and the court had said, yeah, there was a Brady violation, we're going to retry this case, the bankruptcy fraud case hadn't been tried yet, he could have been consolidated, or the bankruptcy fraud case could have gone first. And just because we now know the result of that case doesn't mean that result's accurate, it's on appeal, and it also was not something that was known at that time. Well, it seems to me that what you keep saying is that this information that was of the trial, but that doesn't seem to be what's in front of us in this case. The issue is the denial of the continuance of the sentencing. So whether you have a good claim about whether you got a fair trial or not, explain to me how that's before us. Well, it wasn't going to be before you in any other way if they weren't allowed to bring it up at that time, and the judge stopped all that and went forward with the sentencing and the I don't know, and it's not a record, why the attorneys didn't file that motion for the Brady violation that impacted the guilt and the fairness of that trial. Generally, you can't appeal the underlying conviction until after you've been sentenced. So you filed a motion to continue the sentencing, it's denied, the sentencing occurs, has there then ever subsequently been a motion dealing with the fairness of the trial using all these arguments that you're using today? No. So how is that before us? I'm asking you to remand the case so that it can be before you. I'm saying the judge abused his discretion in not continuing the sentencing to give those attorneys time to file that, to investigate it, and to develop it, and I one of your statements, or a part of your question at the beginning, and that was it wasn't his bankruptcy fraud trial that we're talking about, that his trial counsel never did a trial. They were civil bankruptcy counsel. They filed his pleadings. They filed his bankruptcy for him. They advised him on that bankruptcy. They were not criminal defense attorneys. They did not do the bankruptcy fraud case, and we're not planning to. So I just want to make it clear, as clear as this confusing can be, but I just feel that he was denied, he was denied the opportunity to raise exactly what you're saying he should have raised, and put a record below, and that's why you should remand. And one last time, how was he denied the opportunity to raise that following the sentence? What deprived him of that opportunity? There wasn't time in 14 days. The civil bankruptcy fraud... All you have to file is a notice of appeal saying that you are appealing on, you know, ground X. You might not have had the time to fully develop what was going to be in your brief, but the notice of appeal could have been filed, couldn't it? No, because the record wasn't made. All that they did was they said, we found out about this at the last minute. We're giving you notice that it looks like attorneys in this jurisdiction colluded with the government, colluded with the bankruptcy trustees, and did so while they were under threat of criminal indictment themselves for this bankruptcy, the same bankruptcy, and never disclosed any of that. I see that my time is up, and I'm not sure I made this clear. You have filed sort of a final question. Could you have filed a motion for a new trial in the district court raising these issues? Because the key is it's going really to the substantive guilt level as opposed to the sentencing level. Well, I wasn't trial counsel, but yes, I think they could have if they had the evidence at the time. It's a pretty serious thing to be accusing attorneys of these activities, and they wanted to make sure they had it right, in my opinion. Thank you. Thank you, your honors. Mr. Ranke? If it pleases the court, there are four issues, and the court has discussed the first issue at length about the Brady claim. What he needed to show for Brady, obviously, was evidence that was first favorable to him in some way in this money laundering conspiracy case, and he really can't get past that prong alone, and the court recognized that. Judge Holmick recognized that when he dealt with the motion for continuance, and he just said that this was related, you know, it could possibly provide a defense in the in the bankruptcy fraud case, but it really wasn't related to the money laundering conspiracy sentencing in any way. But how could Mr. Henderson raise the issues that are involved in this in the conspiracy to money launder case, when he found out at this late stage? I think he could have filed a petition for post-conviction relief. I think he could have filed a motion for new trial, which under newly discovered evidence, if it was as he developed it, if it had been developed, it also was, it's not before the court, but it was addressed, and it did come up in the bankruptcy fraud trial. So I think those are two ways they could have done it. So your opponent has emphasized the need to file an appeal within 14 days from the after the judgment, which occurs after sentencing. So would your new trial vehicle be a realistic remedy? I believe it would, Your Honor. I think that the time limit for a new trial is... If you could please, I'm sorry to interrupt, but we lost a judge. I will pause the timer. Thank you. Judge McKee does not seem to be here. Okay, I'm back. You're here. Yeah, sorry about that. Something happened to my laptop and dropped the network connection, and then it wouldn't let me reconnect. Well, we paused things, and Deputy Mitchell has adjusted the timer for us, and Mr. Ranky will let you start answering the question which we left with, which was my question about how mechanically could Mr. Henderson raise these issues in the U.S. government's mind? Thank you, Your Honor. As we started to discuss before, either a petition for post-conviction relief or maybe a motion for a new trial. You could probably still file a motion for a new trial if there was newly discovered evidence. And the judge, I think, recognized that as well when the judge denied the motion for a continuance. Mr. Ranky, if we go back to the Ms. Solove, what do you understand to be the relevance of the communications between the civil bankruptcy lawyers and the trustee on the guilt or innocence in this conspiracy case? That's what Judge Holmick had that issue, that question, too, Your Honor. He didn't see that it was relevant to the money laundering conspiracy. It could have been a defense in the bankruptcy fraud case if his civil bankruptcy counsel did something wrong or if the trustee had prejudged this in some way and believed that it should have been a criminal case before the 341 hearing. You use the bankruptcy fraud as one of the predicate elements of the conspiracy here, didn't you, or one of the bases to prove a bankruptcy fraud? Really, we based it on the money laundering and the wire fraud. The bankruptcy fraud at some point, I think, was in there as part of the continuing conspiracy, but I think we superseded the indictment. So, if you used the claim that he committed bankruptcy fraud, even though he hadn't been tried and convicted on that, in this conspiracy, and it turns out there is some sort of deficiency in the bankruptcy fraud case, does or doesn't that then implicate the fundamental fairness of this trial, if you use that as evidence? Well, we didn't. That didn't come in. It would, Your Honor, but we didn't use that as evidence and it didn't come in. We did move to Mr. Henderson opposed that, claiming the only related issue was the $500,000 commission that was wired into his FTL properties account, and there were other issues in the bankruptcy fraud case. So, the court denied our motion to consolidate. So, it didn't really have anything to do with the money laundering trial. So, are you saying, to follow up on Judge McKeague, are you saying that there was not introduced by the government into evidence here, anything having to do with the bankruptcy fraud issues? No, I don't believe there was, Your Honor. And where I might be confusing myself, too, is that you did talk about whether he had declared the $500,000 on his income tax return, but what you're saying is you did not claim the committing bankruptcy fraud was, in any way, a part of this conspiracy. No, Your Honor. We did, you're correct, as the income tax that did come up that he didn't, through Special Agent Robinson's testimony, they didn't declare it as his income tax. The bankruptcy fraud wasn't part of this trial because the court denied our motion to consolidate. So, the income tax would be a potential, another criminal case, income tax fraud? Yes, Your Honor, it could. It wasn't fraud, but it theoretically, it could be. We'll let you proceed with your argument. Okay. I think I'd like to go to, just briefly, the is okay with that. He was charged with money laundering conspiracy. So, really, what we needed to show is that the money that came in to his FTL Properties account, $500,000, he knew or should have known was derived from a specified unlawful activity, a criminally derived proceed. We didn't have to show that he was necessarily involved in the fraud with Wittenmeyer, as far as getting people to invest or putting, you know, allegedly liens on the bonds, which no one owned. We just had to show that he knew or should have known that this money was essentially dirty money. And I think there's a lot of, and it's circumstantial evidence, but it's a fair amount of circumstantial evidence that shows that he knew or should have known that. Starting with when he was first warned by Special Agent Robinson that Wittenmeyer had had no real income for, legitimate income for years, and that any income he had, that he had fraudulently obtained it, and that he didn't have the money to purchase a $1.7 million house. Henderson's response to that was, well, who Henderson worked with at the time, was affiliated with, they decided they didn't want any, after speaking with the FBI, they decided they didn't really want anything to do with this real estate transaction. Henderson decided he did, because he was going to get a fairly substantial commission, a $50,000 commission, followed by another $50,000 commission, which was unusual in this kind of sale. And he did that even though it meant that Dreamax returned his real estate license to the Ohio Division of Real Estate, saying that Mr. Henderson no longer was affiliated with Dreamax. So, and then at that point, rather than be careful with his dealings with Wittenmeyer, he let Wittenmeyer move into his house. And soon after, Wittenmeyer was arrested in state court for credit card fraud. He had convinced Ira Brody, who was another person in this, in this full bond scheme, to let him use his credit card to charge $25,000 to allegedly close the deal. That was also a fraud. Again, now Henderson's response to this, he's already lost his affiliation with now that he's seen Wittenmeyer be arrested, his response is to bail him out and continue to deal with him. And, and then also mentioned to the bail bondsman that he expected to make a lot of money from Wittenmeyer out of the sales of this house. So at that point, and also then you get to, when the money was transferred into the FTL Properties account, Henderson, the FBI knew of it from another source, that money had gone in and been transferred out of that account. They asked Henderson about it. Henderson denied any knowledge that money had been transferred in or transferred out, instead claiming that he loaned Wittenmeyer money to help him out. All at the same time, money was going in and out of that account at a fairly rapid pace, which the FBI found later when they got the bank records and saw when the money came in and where the money went. He's also, his spending habits changed dramatically, which is in the brief. I won't go into each specific instance of payment, but he did, he spent a lot of money in Florida and spent a lot of money in West Florida. It showed that by a reasonable doubt that he knew that this money was criminally derived proceeds. I'd like to go to the fourth claim about not Ray Henderson, the not Ray Henderson comment during closing argument. That was not a comment on Mr. Henderson's failure to testify or failure to call the FBI. If you look at it in context, the government was discussing first Ira Brody's reaction to being told by the FBI that Wittenmeyer had this checkered past and had a history of fraud. And that when Brody's reaction was he was going to keep dealing with Wittenmeyer, but if money went into the account, he was going to take the appropriate steps and notify the FBI. The government said not Ray Henderson. At that point, I think when you look at it in context, what the government was trying to do was just show, compare and contrast basically Brody's reaction, which the court, which the reasonable reaction, given all the facts and circumstances with Henderson's reaction, which the government argued was not reasonable, obviously, and showed that that's how he dealt with the situation. But the closing argument, as I understand it, the lawyer for the government says, speaking about Brody, he said, if I'm going to get money, I'm going to call the FBI first, not Ray Henderson. And so isn't that suggesting that Henderson needed to volunteer information? It's different, arguably, from a situation in the exercise of the right to silence kind of situation, but it's almost requiring people to go to the FBI to volunteer information. Is that a proper comment? Again, we don't, the government doesn't, government believes that it wasn't the nature of the comment, but even if it was, I don't necessarily think that would be improper. Do people have a duty to go volunteer information to the FBI? Oh, no, they do not, none. But what, it wasn't a situation where, like a Doyle situation where you're saying, oh, he's guilty. I think in Doyle, that was, you were Mirandized, you were told that your silence wouldn't be used against you. And then at trial, when you came up with an alternative explanation of the government's case at trial, they used your silence against you. That's not really what this case is. I mean, it's not a comment on his failure to testify, or really his failure to even go to the FBI. I think what the government was trying to do was just compare two different approaches to the same situation. Even if the comment was somehow improper, which the government disputes, it wasn't isolated. It was not extensive. It wasn't deliberately made in like, after the court had sustained an objection to a similar line of questioning. And the evidence against Henderson was sufficient to prove beyond a reasonable doubt that he committed disaffirmation. So if there's no further questions, I would ask the court to affirm the judgment of the district court. Thank you. Ms. Zorlob, I think you have some rebuttal time. I do, Your Honor. Thank you. Three minutes. First of all, Judge Moore, I'd like to get back to your question to AUSA Rankey about nothing introduced in the money laundering case about the bankruptcy. It wasn't because the government didn't try. They filed a motion in limine to be able to introduce bankruptcy, not pleadings, but information in the money laundering case. Let's see if I can give you the... What difference does it make if they tried but failed? Well, because then it was used as something that was held over Ray Henderson's head. If he testified, they were going to come in. And that was the judge's ruling. So they said they were relevant to the money laundering case. Now they say they aren't. They also tried to consolidate. They knew when they tried to consolidate, there was this other... Well, I assume they knew at that time, but there was this other evidence out here. It wasn't produced. Ray Henderson opposed that consolidation because he didn't know about that. He didn't know he had this huge issue and defense to the bankruptcy fraud case. All right, let me try one more time. Okay. Notwithstanding their efforts, the jury didn't hear about bankruptcy fraud, right? Correct. Now they still convicted him of this conspiracy. So if you could just explain one more try why something that the civil attorneys were doing in connection with this bankruptcy had an adverse impact on this trial when the jury didn't know that he was even charged with bankruptcy fraud? Yes, Your Honor. Ray Henderson was his own best witness, and he was unable or unwilling to take the risks that were facing him to testify. And his proffer is actually a part of the record. It's in a sealed pleading. It's in the 180s. It's an attachment. So you could see his proffer. You could see what he would have said. He would have been a great witness for himself. And that really is the crux of this, because he opposed consolidation. And I think the court would have granted consolidation if he had not opposed it. The government could have also tried the bankruptcy fraud case first. And during the sealed hearing on this motion to continue, Mr. Henderson's counsel said also that the order of trial turned out to be important. And that it was litigated and not decided that the bankruptcy fraud case would go first. I couldn't find those pleadings. I couldn't find that information. But I know that it wasn't contested when he said it. And they also said in the motion to continue that it affected Mr. Henderson's whether or not he testified. And so we don't have what was going to happen in this case if he had testified. And I think that's the crux. And I guess that's a good place to end this because my time is up. Thank you both for your argument. The case will be submitted. And Ms. Sullivan, I believe you are appointed pursuant to the Criminal Justice Act. And we thank you for your service to your client. Thank you, Your Honor. It's been an honor to do that. Thank you both. And the case will be submitted and you may exit the courtroom. Thank you.